UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOON ROCKET INC., *et al.*,
  Plaintiffs,

-v-

CITY OF NEW YORK, *et al.*,
  Defendants.

24-CV-4519 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Twenty-seven businesses bring this 42 U.S.C. § 1983 action against the City Of New York, Commissioner of the New York City Department of Finance Preston Niblack, New York City Sheriff Anthony Miranda, and Commissioner of the New York City Office of Administrative Trials and Hearings ("OATH") Asim Rehman (collectively, "Defendants"). Before the Court is Defendants' motion to dismiss the complaint for failure to state a claim. For the reasons that follow, the motion to dismiss is granted.

**I.    Background**

  **A.    Statutory Background**

In March 2021, the New York State Legislature enacted the Marihuana Regulation and Taxation Act ("Cannabis Law") to legalize adult-use cannabis and regulate the cannabis industry. Cannabis Law § 125(1) provides that "[n]o person shall cultivate, process, distribute for sale or sell at wholesale or retail or deliver to consumers any cannabis, cannabis product, medical cannabis or cannabinoid hemp or hemp extract product, or any product marketed or labeled as such, within the state without obtaining the appropriate registration, license, or permit therefor required by this chapter unless otherwise authorized by law."

In April 2024, the State Legislature added Chapter 5-A to Title 7 of New York City's Administrative Code ("N.Y.C. Admin. Code"), providing additional enforcement power to local municipalities against illicit sales and marketing of cannabis. As relevant here, N.Y.C. Admin. Code § 7-551 authorizes civil penalties for violations of the Cannabis Law, including for the unlicensed sale of cannabis, following the service of a civil summons. N.Y.C. Admin. Code § 7-552 authorizes the City Sheriff to inspect businesses and to "[i]ssue and execute an order to seal a building or premises where any person is engaged in conduct prohibited by section 7-551 and which . . . poses an imminent threat" to public health, safety, and welfare as defined in Cannabis Law § 138-b(4). "Factors that determine an imminent threat to public health, safety, and welfare" include, *inter alia*, "documented sales to minors," "unlicensed processing of cannabis products," "violent [or] tumultuous . . . behaviors," "presence of unlawful firearms," and "proximity . . . to schools, houses of worship, or public youth facilities." Cannabis Law § 138-b(4). A sealing order must be served by physical delivery, posting, and mail. N.Y.C. Admin. Code § 7-552(g).

Summonses and sealing orders must be adjudicated in an administrative proceeding before OATH within five business days of issuance. *Id.* § 7-552(b)(2). The OATH hearing officer "shall make a determination on such civil summons, which shall be deemed a final decision of such office, and shall also make a recommendation to the office of the city sheriff with respect to whether such order to seal was properly issued." *Id.* The Rules of the City of New York ("RCNY") lay out the OATH's hearing and evidentiary procedures. "Each party has the right to present evidence, to examine and cross-examine witnesses, to make factual or legal arguments and to have other rights essential for due process and a fair and impartial hearing." 48 RCNY § 6-11. As the petitioner in an OATH hearing, the Sheriff "has the burden of proving the

factual allegations contained in the summons by a preponderance of the evidence," and the respondent "has the burden of proving an affirmative defense, if any, by a preponderance of the evidence." *Id.* § 6-12(a). "A [r]espondent may appear for a hearing personally or be represented by" counsel or other individuals. *Id.* § 6-09(a).

Within four business days after an OATH hearing, the Sheriff "shall . . . make a determination with respect to continuation of such order to seal upon review of such recommendation" by the OATH hearing officer. N.Y.C. Admin. Code § 7-552(b)(2). If the Sheriff's final determination directs that the sealing order remain in place, it shall be effective for one year, but a sealing order shall be vacated if a business submits sufficient evidence that the unlicensed activity has been abated. Cannabis Law § 138-b(9). A business may challenge the Sheriff's final determination by filing an action in New York State Supreme Court pursuant to Article 78 of New York Civil Practice Law and Rules ("CPLR").

### B.  Factual Background[1]

Plaintiffs are twenty-seven New York corporations doing business in New York City. (ECF No. 11 ("Compl.") ¶¶ 9-35.) In May 2024, the Sheriff conducted an inspection of each Plaintiff's store and "seized alleged cannabis and cannabis products during the search." (*E.g.*, *id.* ¶ 56.) In each instance, the Sheriff proceeded to issue a summons charging a violation of N.Y.C. Admin. Code § 7-551 and a sealing order that "immediately closed" Plaintiff's store, leaving "the business completely unable to generate any revenue." (*E.g.*, *id.* ¶¶ 56-57.)

Within five business days, each Plaintiff, represented by an attorney, attended a hearing before OATH. (*E.g.*, *id.* ¶ 59.) At the hearings, the Sheriff did not offer testimony, but rather

---

[1] Unless otherwise noted, the following facts are taken from Plaintiffs' complaint and are assumed true for purposes of resolving this motion to dismiss. *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

"submitted various documents and photos taken by the Sheriff and/or NYPD during the . . . search." (*Id.*) Each Plaintiff challenged the sufficiency of the evidence and argued that "the service of the summons and the sealing order . . . did not comport with statutory requirements." (*E.g.*, *id.* ¶ 60.) Plaintiff Vegan Magic, in addition, offered the testimony of its owner, who stated that Vegan Magic "was a bakery that was yet to open" and "had absolutely nothing to do with any cannabis or cannabis products that may have been discovered inside of another business located nearby." (*Id.* ¶ 260.)

For the twenty-seven Plaintiffs, OATH and the Sheriff determined as follows:

- In seventeen cases, the OATH hearing officer sustained the summons, imposed a fine, and recommended that the sealing order continue. (*Id.* ¶¶ 77, 117, 125, 141, 149, 157, 165, 173, 189, 197, 205, 213, 229, 237, 245, 253, 269.) In fifteen of those cases, the Sheriff continued the sealing order. (*Id.* ¶¶ 118, 126, 142, 150, 158, 166, 174, 198, 206, 214, 230, 238, 246, 254, 270.) In one case, the Sheriff rescinded the sealing order upon further review of the evidence. (*Id.* ¶ 190.) In another case, the Sheriff had not issued a final decision by the time of the filing of the complaint. (*Id.* ¶ 78.)

- In five cases, the OATH hearing officer sustained the summons, but recommended that the sealing order be lifted due to deficient service of the sealing order or the Sheriff's failure to establish an imminent threat. (*Id.* ¶¶ 61, 133, 181, 221, 261.) In one of those cases, the Sheriff disagreed with OATH's recommendation and mandated that the sealing order continue for one year. (*Id.* ¶ 62.) In the other four cases, the Sheriff rescinded the sealing order and permitted the stores to reopen. (*Id.* ¶¶ 134, 182, 223, 262.)

- In four cases, the OATH hearing officer dismissed the summons for defective service but recommended that the sealing order remain in place. (*Id.* ¶¶ 85, 93, 101, 109.) In those cases, the Sheriff continued the sealing order. (*Id.* ¶¶ 86, 94, 102, 110.)

- In one case, the OATH hearing officer dismissed the summons and recommended lifting the sealing order (*id.* ¶ 69), but the Sheriff kept the sealing in place (*id.* ¶ 70).

Following the Sheriff's final determination to keep the sealing orders in place, three Plaintiffs commenced Article 78 proceedings in New York State Supreme Court, seeking TROs and preliminary injunctions to stay enforcement of the sealing orders and permit the stores to reopen.[2] *See Smoke Base Convenience Store Inc. v. City of New York*, No. 713432/2024 (N.Y. Sup. Ct. June 20, 2024); *Lush Convenience 161 Inc. v. City of New York*, No. 810015/2024E (N.Y. Sup. Ct. June 20, 2024); *Mao Shoppe Corp. v. City of New York*, No. 155907/2024 (N.Y. Sup. Ct. June 26, 2024).

### C. Procedural History

On June 13, 2024, Plaintiffs filed the operative complaint in this action. (Compl.) On July 18, 2024, following a hearing, the Court denied Plaintiffs' motion for a preliminary injunction. (ECF No. 27.) Defendants moved to dismiss the complaint on August 9, 2024 (ECF No. 30) and filed a supporting memorandum of law (ECF No. 31 ("Mem.")). After missing the original deadline to respond, and upon the Court's grant of an extension, Plaintiffs eventually filed an "affirmation" by their attorney "in opposition" to the motion to dismiss on September

---

[2] Although these proceedings are not mentioned in the complaint, "[a] court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *see also Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 317 n.7 (S.D.N.Y. 2015) ("The Court may take judicial notice of pleadings filed in other cases in deciding a motion to dismiss without converting that motion into a motion for summary judgment." (citing *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000))).

23, 2024.[3]  (ECF No. 38 ("Opp.") (capitalization altered).)  Defendants replied in further support of their motion on October 15, 2024.  (ECF No. 41.)

## II.  Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must state "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint will be dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.  In ruling on a motion to dismiss, the Court must accept the plaintiff's factual allegations as true, "drawing all reasonable inferences in favor of the plaintiff."  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

## III.  Discussion

The Due Process Clause of the Fourteenth Amendment provides that:  "No state shall . . . deprive any person of . . . property, without due process of law."  "In a § 1983 suit brought to enforce procedural due process rights, a court must determine (1) whether a property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest."  *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011).

---

[3] This submission fails to comply with Local Rule 7.1.  *See Moriera v. Sherwood Landscaping Inc.*, No. 13-CV-2640, 2014 WL 12539653, at *6 n.6 (E.D.N.Y. Mar. 31, 2014) ("Pursuant to Local Civil Rule 7.1, legal argument is to be set forth in a memorandum of law, while factual affirmations are to be set forth in affidavits.").  While the Court, in its discretion, still considers legal arguments made in Plaintiffs' submission, the Court disregards any new facts stated therein, as "[i]t is well-settled that a plaintiff cannot amend the complaint through briefs and affidavits," *In re Agape Litig.*, 773 F. Supp. 2d 298, 316 (E.D.N.Y. 2011).

Defendants argue that "Plaintiffs fail to allege a valid property interest" because the complaint does not specify any lawful businesses they conducted, and "Plaintiffs have no property interest in the continued operation of an illegal enterprise, such as selling cannabis products without a license." (Mem. at 19-20.) However, Plaintiffs allege generally that they are New York corporations doing business in New York City (Compl. ¶¶ 9-35), and one Plaintiff was "a bakery that was yet to open" (*id.* ¶ 260). Drawing all reasonable inferences in favor of Plaintiffs, the Court declines to infer that Plaintiffs engaged solely in illegal business simply from the lack of specific allegations about other business they engaged in.

Thus, the Court concludes that property interests are implicated and proceeds to consider what process is due. Plaintiffs contend that the post-deprivation process after a business is sealed pursuant to N.Y.C. Admin. Code §§ 7-551 and 7-552 is inadequate under *Mathews v. Eldridge*, 424 U.S. 319 (1976).[4] To evaluate whether the government's procedure satisfies due process, courts must balance three factors set forth in *Mathews*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

---

[4] The complaint also suggests that due process was violated by the lack of pre-deprivation process. (*See* Compl. ¶ 3 ("The Due Process Clause does not permit the Sheriff to seal a business, without first seeking judicial review, based upon the Sheriff's own unilateral finding that the business poses an imminent threat to the public's health, safety, or welfare.")) But Plaintiffs have abandoned this argument in their opposition. (*See* Opp. at 3-10.) In any event, "[d]ue process does not, in all cases, require a hearing before the state *interferes* with a protected interest, so long as some form of hearing is provided before an individual is finally deprived of the property interest." *Nnebe*, 644 F.3d at 159 (cleaned up).

On the one hand, the private interest affected here—Plaintiffs' ability to operate their businesses for purposes other than the unlicensed sale of cannabis—is significant. *Spinelli v. City of New York*, 579 F.3d 160, 171 (2d Cir. 2009) (holding that the private interest "in operating a business and, stated more broadly, pursuing a particular livelihood" "is strong"). Plaintiffs allege that the Sheriff's sealing orders caused the immediate and complete closure of their stores, leaving the businesses unable to generate any revenue. (*E.g.*, Compl. ¶¶ 56-57.) "The Supreme Court has 'repeatedly recognized the severity of depriving someone of his or her livelihood.'" *Spinelli*, 579 F.3d at 171 (quoting *FDIC v. Mallen*, 486 U.S. 230, 243 (1988)). Accordingly, the first *Mathews* factor weighs in favor of Plaintiffs.

On the other hand, the City's interest in protecting public health and safety by containing the unlicensed sales of cannabis is also compelling. *See Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 200 (1981) ("Protection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action."); *Catanzaro v. Weiden*, 188 F.3d 56, 63 (2d Cir. 1999) ("The law should not discourage officials from taking prompt action to insure the public safety."). The New York State Legislature found that unlicensed establishments selling cannabis are a threat to public health, safety, and welfare, *see* Cannabis Law § 2, and specifically authorized sealing orders to target "documented sales to minors," "unlicensed processing of cannabis products," "presence of unlawful firearms," and other enumerated causes of imminent threat to the public, *id.* § 138-b(4). Accordingly, the third *Mathews* factor weighs in favor of Defendants.

The analysis thus turns on "the risk of an erroneous deprivation" resulting from the current procedure. *Mathews*, 424 U.S. at 355. As discussed above, in order to issue a sealing order, the Sheriff must determine that the business is engaged in the unlicensed sale of cannabis

and that the unlicensed activity poses an imminent threat to public health, safety, and welfare, as specifically defined in the law. N.Y.C. Admin. Code § 7-552(b)(2). Then, within five days of issuance, the sealing order is adjudicated through an impartial OATH hearing where businesses have the right to be represented by counsel, present evidence, and cross-examine witnesses. *Id.*; 48 RCNY §§ 6-09(a), 6-11. The OATH hearing officer promptly issues a recommendation, and within four business days, the Sheriff must make a final determination either adopting or rejecting the OATH hearing officer's recommendation. N.Y.C. Admin. Code § 7-552(b)(2). Following an adverse decision, a business may (1) seek judicial review through an Article 78 proceeding, or (2) submit subsequent evidence of abatement to have the sealing order vacated, Cannabis Law § 138-b(9).

Here, four of the Plaintiffs were successful at OATH and the Sheriff adopted OATH's decisions to lift the sealing orders. For another Plaintiff, the Sheriff rejected OATH's recommendation to sustain the sealing order and issued a final determination permitting the store to reopen. Three other Plaintiffs filed Article 78 actions in New York State Supreme Court to challenge the Sheriff's determination to continue the sealing orders. These results show that the procedures in place provide a meaningful opportunity for businesses to challenge sealing orders issued in error.

Nevertheless, Plaintiffs maintain that "it is a violation of due process to leave ultimate decision making authority whether to close a business, regardless of an OATH hearing officer's findings and decision, with the Sheriff." (Opp. at 7.) But due process does not dictate that OATH, rather than the Sheriff, be the final administrative decision-maker. The regulatory scheme in N.Y.C. Admin. Code § 7-552(b)(2), where "the city sheriff shall . . . make a determination with respect to continuation of such order to seal upon review of [the OATH]

9

recommendation," is not uncommon. The enforcing agency similarly makes the final decision upon review of OATH recommendations in areas of the New York State Public Health Law, New York State General Business Law, and trade waste laws. *See* 48 RCNY § 6-17(c). "[T]he simple 'combination of investigative and adjudicative functions does not, without more, constitute a due process violation,'" because "the adjudicators [are] entitled to a presumption of honesty." *Greenberg v. Bd. of Governors of Fed. Rsrv. Sys.*, 968 F.2d 164, 167 (2d Cir. 1992) (quoting *Withrow v. Larkin*, 421 U.S. 35, 58 (1975)). Plaintiffs cite nineteen cases where the Sheriff disagreed with OATH's recommendation to show the Sheriff's "blatant abuse of discretion" (Opp. at 5; *see* ECF No. 38-2), but such disagreements are an inherent feature of the statutory design and sometimes result in the reopening of stores despite an adverse finding by OATH (*see* Compl. ¶¶ 189-90). Plaintiffs also argue that "[f]act-finders, particularly in settings of administrative hearings, should be given great deference," but the cases they cite in support involve appellate review of trial court decisions, not the allocation of authority in administrative proceedings. (Opp. at 5 (citing *Thoreson v. Penthouse Intern., Ltd.*, 80 N.Y.2d 490, 495 (1992)); *Martin v. Fitzpatrick*, 19 A.D.3d 954, 957 (3d Dept. 2005); *Am. Ass'n of Bioanalysts v. N.Y. State Dep't of Health*, 75 A.D.3d 939, 943 (3d Dept. 2010).)

Importantly, the availability of Article 78 review serves as additional post-deprivation process that lowers the risk of erroneous deprivation.[5] "[CPLR] Article 78 . . . authorizes New

---

[5] Plaintiffs cite two New York Supreme Court cases that reversed the Sheriff's final decision under Article 78 review to argue that the Sheriff's authority to make a final administrative decision is unconstitutional. (Opp. at 3, 6; *see* ECF Nos. 38-1, 38-3.) But those cases do not support Plaintiffs' proposition. (*See* ECF No. 38-1 at 2-3 ("[T]he Court's function in this action is not to sit in judgment of those procedures and applicable laws . . . as the Petitioner is not challenging their validity. Rather, the Court's sole function here is to determine whether the ultimate decisions issued by [the Sheriff] were arbitrary and capricious and unsupported by substantial evidence.") If anything, they suggest that Article 78 actions are a useful mechanism for addressing any erroneous determinations by the Sheriff.

York state courts to conduct special proceedings in which a petitioner may obtain speedy review of state administrative action." *Whitfield v. City of New York*, 96 F.4th 504, 511 (2d Cir. 2024). "An Article 78 proceeding permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims." *Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001). The Second Circuit has repeatedly held that the availability of Article 78 review, combined with some limited administrative procedure, satisfies due process. *See, e.g.*, *id.* at 173, 175 ("An Article 78 proceeding [following a 'minimal' pre-termination hearing] constitutes a wholly adequate post-deprivation hearing for due process purposes."); *Interboro Inst., Inc. v. Foley*, 985 F.2d 90, 94 (2d Cir. 1993) ("[N]o further pre-deprivation hearing was required where the written submissions were accepted and reviewed at each stage of the evaluation process and a post-deprivation full evidentiary hearing was available under Article 78."); *Morton v. Cnty. of Erie*, 796 F. App'x 40, 43 (2d Cir. 2019) ("[A]n opportunity to make a written submission to the Board [of Ethics] . . . [followed by] the post-deprivation opportunity to file a request with the Board for reconsideration and to challenge the Board's decision through an Article 78 proceeding . . . was sufficient."); *see also Lilakos v. New York City*, 808 F. App'x 4, 10 (2d Cir. 2020) (summary order) ("We have held on numerous occasions that an Article 78 proceeding is a perfectly adequate post-deprivation remedy; we have expressed concern only where there is a lengthy deprivation." (cleaned up)). Here, the administrative process preceding an Article 78 action only takes nine days. Plaintiffs argue that "an Article 78 action forces the business to retain an attorney, which may be financially difficult . . . , and Article 78 petitions challenging

11

the Sheriff's Decisions has [sic] proven to be quite lengthy."[6] (Opp. at 7.) But the financial burden and delay caused by litigation are common to all Article 78 proceedings. Plaintiffs have failed to distinguish this case from the many others that held Article 78 review to provide an adequate procedural backstop to guard against erroneous deprivation of property interests. Therefore, the Court concludes that the risk of erroneous deprivation resulting from the current procedure is low.

Given the low risk of erroneous deprivation and the substantial government interest in protecting public health and safety, the *Mathews* factors weigh in favor of Defendants. N.Y.C. Admin. Code §§ 7-551 and 7-552, coupled with the availability of Article 78 review, provide adequate procedural protections to safeguard Plaintiffs' due process rights under the Fourteenth Amendment.

### IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

The Clerk of Court is directed to terminate the motion at Docket Number 30, to enter judgment dismissing the Plaintiffs' claims, and to close this case.

SO ORDERED.

Dated: March 21, 2025
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[6] Plaintiffs' counsel discusses his anecdotal experience with Article 78 proceedings in his affirmation opposing the motion to dismiss (Opp. at 7-8), but as noted above, the Court does not consider these factual statements in resolving a Rule 12(b)(6) motion. *See supra* n.3.